IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| MITCHELL MOORE and ANTONIA MOORE,<br><br>Plaintiffs,<br><br>vs.<br><br>EXPRESS RECOVERY SERVICE, INC.,<br><br>Defendant. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 1:16-cv-00126-TC-EJF |

Plaintiffs Antonia and Mitchell Moore[1] allege that Defendant Express Recovery Service (ERS), a debt collection agency, violated the Fair Debt Collection Practices Act (FDCPA, or Act), 15 U.S.C. § 1692 et seq., when it sent a collection letter that failed to identify their original creditors, and instead used the generic term "Your Creditors." The Moores and ERS have filed cross-motions for summary judgment. The Moores contend that ERS committed a material violation of the FDCPA. ERS contend that its failure to name the original creditors was too minor an error to violate the FDCPA. ERS also raises the bona fide error defense as an alternate

---

[1] For clarity, the court will refer to Ms. and Mr. Moore together as "the Moores," and individually by their first names, Antonia and Mitchell.

grounds for summary judgment, contending that its violation was unintentional and made despite procedures designed to prevent such an error.

For the reasons set forth below, the court finds that ERS committed a material violation of the FDCPA, but that disputed material facts preclude summary judgment on ERS' bona fide error defense.

## BACKGROUND

This case arises from five outstanding medical bills that the Moores owed to two creditors—Utah Imaging Associates and the University of Utah Healthcare. Between 2011 and 2016, these creditors assigned the five accounts to ERS for collection. Utah Imaging Associates assigned the first account in 2011, and two additional accounts in 2013. University of Utah Healthcare assigned two additional accounts to ERS, both in Mitchell's name, in 2016.

On June 16, 2016, Jackie Gutierrez, a collection specialist with ERS, called Antonia to discuss all five outstanding accounts. During the call, Ms. Gutierrez discovered that Antonia and Mitchell were married at the time Mitchell had incurred his debts with University of Utah Healthcare, so Ms. Gutierrez added Antonia as a responsible party on the two most recent accounts. On June 17, 2016, Ms. Gutierrez sent validation letters to Antonia for the two accounts, which named the original creditor (University of Utah Healthcare) and listed the amount owed on each of the two accounts (ERS had already sent similar validation letters to the Moores for the three older Utah Imaging Associate accounts in 2011 and 2013, shortly after they were assigned).

The trouble occurred when, in addition to the two validation letters, Ms. Gutierrez also sent Antonia an "IQ letter" listing the total amount owed on the three older Utah Imaging

Associates accounts. An IQ letter lists the total amount of all monies owed by a debtor, and is only to be sent when a debtor requests a payoff balance. And unlike validation letters, which name the original creditor, IQ letters tabulating multiple accounts will, by default, simply reference "Your Creditors."[2]

The Moores allege that ERS' IQ letter violates the FDCPA because it failed to identify the original creditor. ERS contends that the omission of the original creditor's name, while perhaps a technical violation of the FDCPA, is not a material violation because Ms. Gutierrez discussed all five outstanding accounts the day before she sent the IQ letter. ERS also contends that even if the omission is material, it was unintentional and resulted from a bona fide error.

## ANALYSIS

**I. Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when, under the applicable substantive law, it might affect the

---

[2]In their Opposition to ERS' Motion for Summary Judgment, the Moores explain that language "Your Creditors" is a result of prompts on ERS' software:

> When sending an IQ letter to a consumer with multiple accounts, Defendant's collection agent is then prompted on which accounts to include in the letter by being given three options: "yes" (include additional account); "no" (don't include additional accounts); or "select" (select specific accounts to include). If the collection agent chooses either "yes" or "select" the . . . language of "Your Creditors" appears on the letter sent to the consumer. If the agent chooses "no" then the letter is sent out for one account and it identifies the original creditor in the letter.

(Pls.' Opp. to Def.'s Mot. Summ. J. at 10–11, ECF No. 46.)

outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if the evidence might lead a reasonable jury to return a verdict for the nonmoving party. Id.

"The movant bears the initial burden of proving that no genuine issues of material fact exist for trial." Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the movant meets its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (internal quotation omitted). In a case such as this, where both parties have filed cross-motions for summary judgment, the court must "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." Fox v. TransAm Leasing, Inc., 839 F.3d 1209, 1213 (10th Cir. 2016) (internal quotation omitted).

## II. The Moores' FDCPA Claim

The FDCPA prohibits a debt collector from, among other things, using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e includes a nonexclusive list of sixteen practices that amount to violations, including "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer." Id. § 1692e(10). A debt collector can violate these provisions by misstating or failing to state the original creditor on a collection letter. See, e.g., Tourgeman v. Collins Fin. Servs., Inc., 755 F.3d 1109, 1121 (9th Cir. 2014); Isham v. Gurstel, Staloch & Chargo, P.A., 738 F. Supp. 2d 986, 996 (D. Ariz. 2010); Heathman v. Portfolio Recovery Assocs., LLC, No. 12-CV-515, 2013 WL 3746111 (S.D. Cal.

July 15, 2013); Schneider v. TSYS Total Debt Mgmt., Inc., No. 06-C-345, 2006 WL 1982499, at *3–*4 (E.D. Wisc. July 13, 2006).

Claims under 15 U.S.C. § 1692e are judged using a "least sophisticated consumer" standard, which asks "how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." Ferree v. Marianos, No. 97-6061, 1997 WL 687693, at * 1 (10th Cir. Nov. 3, 1997) (unpublished) (quoting Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir. 1996)). The standard is objective. It "pays no attention to the circumstances of the particular debtor in question." Easterling v. Collecto, Inc., 692 F.3d 229, 234 (2d Cir. 2012).

Because the least sophisticated consumer standard sets a low bar, courts label the FDCPA a strict liability statute. See, e.g., Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1030 (9th Cir. 2010). But strict liability is something of an overstatement. Courts consistently require that violations of 15 U.S.C. § 1692e be "material"—a "corollary inquiry into whether a statement is likely to mislead an unsophisticated consumer." Id. at 1034. And the FDCPA includes a "bona fide error" defense—a debt collector can avoid liability for a material violation of the Act if it "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

The parties' cross-motions for summary judgment ask the court to decide whether, as a matter of law, ERS' failure to list the Moores' original creditors in the IQ letter was a material violation of the FDCPA and, if so, whether the bona fide error defense shields ERS from liability.

Materiality

Though the Tenth Circuit has not discussed a materiality requirement in a published decision, it has recognized that "[t]he FDCPA does not result in liability for every statement later alleged to be inaccurate, no matter how small or ultimately harmless." Maynard v. Cannon, 401 F. App'x 389, 397 (10th Cir. 2010). Other circuits provide more guidance. The Ninth Circuit has explained that material statements "cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to a collection effort," Tourgeman, 755 F.3d at 1121, while "immaterial statements . . . do not affect a consumer's ability to make intelligent decisions." Donohue, 592 F.3d at 1034. The Seventh Circuit has likewise stated that the Act "is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect).'" Hahn v. Triumph P'ships LLC, 557 F.3d 755, 757–58 (7th Cir. 2009)). These cases outline a uniform standard, stated concisely by the Third Circuit: "a statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor." Jensen v. Pressler & Pressler, 791 F.3d 413, 421 (3d Cir. 2015).

Under this standard, ERS' failure to name the Moores' creditors in its IQ letter amounts to a material violation of the FDCPA. At the most basic level, "[k]nowing a creditor's identity allows the 'least sophisticated consumer' to make more informed decisions on how to communicate with the creditor and avoid being misled." Isham, 738 F. Supp. 2d. at 996. Without that information, "the least sophisticated consumer is left unable to verify the debt purportedly owed, much less attempt to resolve that debt directly and extrajudicially." Heathman, 2013 WL 3746111, at *4. Additionally, because the IQ letter does not list each

6

account, the least informed consumer could assume (incorrectly) that it sets forth the total amount owed.

ERS argues that its failure to name the Moores' creditor is not material because the Moores could not themselves have suffered any confusion. ERS points out that it had properly sent validation letters for all of the individual debts, and that Antonia had spoken to an ERS representative about each debt just before receiving the IQ letter.

But materiality depends on the objective least sophisticated consumer standard, not the recipient's subjective state of mind. "[I]t is unimportant whether the individual that actually received a violative letter was misled or deceived." Lox v. CDA, Ltd., 689 F.3d 818, 826 (7th Cir. 2012). The undisputed facts show that the IQ letter failed to name the Moores' creditors, and that the error could mislead the objective least sophisticated consumer. The Moores are entitled to summary judgment on the issue of materiality.

Bona Fide Error

Having determined that ERS materially violated the FDCPA, the court must determine whether ERS has shown that it is entitled to the bona fide error defense. To avoid liability, a debt collector needs to prove three elements: "that the violation was 1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably adapted to avoid the error." Johnson v. Riddle, 443 F.3d 723, 727–28 (10th Cir. 2006).

Because ERS seeks summary judgment on the basis of an affirmative defense, it "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." Id. at 724 n.1 (quoting Hutchison v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997)). If ERS meets its initial burden, the Moores "must then demonstrate with specificity the existence of a disputed

7

material fact." Id. If the Moores fail to make such a showing, ERS is entitled to summary judgment.

The first element of the bona fide error defense is subjective, and requires that the debt collector show "that the violation was unintentional, not that the underlying act itself was unintentional." Id. at 728. The element depends on "the lack of specific intent to violate the Act." Id.

The second and third elements are objective. To satisfy the bona fide error element, a debt collector must show that its violation "was an error made in good faith; a genuine mistake, as opposed to a contrived mistake." Kort v. Diversified Collection Servs., Inc., 394 F.3d 530, 538 (7th Cir. 2005). The procedure element "involves a two-step inquiry: first, whether the debt collector 'maintained'—i.e., actually employed or implemented—procedures to avoid errors; and second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." Johnson, 443 F.3d at 729.

ERS focuses heavily on the procedure element. In its statement of material facts pertaining to the bona fide error defense, ERS states that its employees are trained to send an IQ letter only "when specifically requested by consumers seeking a payoff amount." (Def.'s Mot. Summ. J. at 8.) The Moores do not dispute this fact. ERS further states that it "implemented a policy and procedure requiring its employees to follow the training provided when sending letters to consumers." (Id. at 7.) The Moores do dispute this fact, noting that ERS has not presented evidence of a policy or procedure apart from the deposition testimony of Michelle Camp, ERS' chief operating officer.

8

Ms. Camp testified that ERS had no written policy with regard to "subsequent notices" such as IQ letters. (Dep. of M. Camp 58:17–59:1, ECF No. 43-5.) Rather, an ERS manager "sat down with all the new hires in his individual training period and went through each individual notice or letter . . . and goes over what circumstances those are used under and when and how to send those." (Id. at 59:1–5.) Once trained, ERS's employees would follow prompts on a computer program to generate certain types of collection letters. A third-party letter vendor would print and mail the letters, and ERS had no policy or practice to review letters before they were sent.

Asked in her deposition why she believed the bona fide error defense should apply, Ms. Camp answered that it was because Ms. Gutierrez had failed to follow procedures designed to prevent the error. But ERS admits in its briefing that it "does not have any written procedures to avoid the error at issue." (Def.'s Reply in Supp. of Mot. Summ. J. at 4, ECF No. 51.) And Ms. Camp stated in her deposition that "there's no great explanation" for why Ms. Gutierrez sent the misleading IQ letter. (Dep. of M. Camp 55:11–12.) The court finds that disputed material facts exist as to whether ERS maintained procedures reasonably adapted to avoid its error.

The disputed facts surrounding the procedure element of the bona fide error defense also undermine the first and second elements. According to ERS, its error was unintentional and made in good faith because it occurred despite adequate policies and procedures. The Tenth Circuit has lent some credence to this argument, recognizing that adequate procedures "may be determinative of [a debt collector's] subjective and objective intent." Johnson, 443 F.3d at 732. But because the court cannot determine as a matter of law that ERS has satisfied the procedure

element, it likewise cannot decide the first and second elements. ERS is not entitled to summary judgment on the bona fide error defense.

**ORDER**

The court finds that the Moores are entitled to summary judgment on their claim that ERS materially violated the FDCPA, but that disputed facts exist regarding ERS' bona fide error defense. Accordingly, Plaintiffs' Motion for Summary Judgment (ECF No. 43) is GRANTED IN PART AND DENIED IN PART, and Defendant's Motion for Summary Judgment (ECF No. 44) is DENIED.

DATED this 2nd day of January, 2019.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge